# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **REPORT AND RECOMMENDATION** |
| **Plaintiff,** | |
| | **Case No. 2:09-cr-150-DB-PMW** |
| **v.** | |
| **DOUGLAS L. FRANCOM,** | **District Judge Dee Benson** |
| **Defendant.** | **Magistrate Judge Paul M. Warner** |

District Judge Dee Benson referred this case to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(B).[1] Before the court are Douglas L. Francom's ("Francom") (1) motion to suppress,[2] (2) motion for a *Franks* hearing,[3] and (3) motion for disclosure of the identity of a confidential informant.[4]

## PROCEDURAL HISTORY

Francom was charged by original indictment on March 19, 2009, and by superseding indictment on May 13, 2009, with three counts of possession of methamphetamine with intent to distribute.[5] Francom's first lawyer, whom Francom retained, filed a motion to suppress on April

---

[1] *See* docket no. 16.

[2] *See* docket nos. 12, 55.

[3] *See* docket no. 68.

[4] *See* docket no. 67.

[5] *See* docket nos. 1, 22.

16, 2009.[6]  The United States of America ("government") responded to that motion on April 20, 2009.[7]

On April 28, 2009, Judge Benson referred the case to this court pursuant to 28 U.S.C. § 636(b)(1)(B).[8]  The following day, this court scheduled an evidentiary hearing on Francom's motion to suppress for May 14, 2009.[9]  On May 12, 2009, Francom filed a motion to continue that hearing.[10]  The court granted that motion and rescheduled the evidentiary hearing for June 23, 2009.[11]  On June 15, 2009, Francom filed a second motion to continue the evidentiary hearing.[12]  The court granted that motion and rescheduled the evidentiary hearing for August 25, 2009.[13]

On August 20, 2009, Francom's first lawyer filed a motion to withdraw as Francom's counsel of record.[14]  Consequently, the court vacated the evidentiary hearing scheduled for

---

[6]  *See* docket no. 12.

[7]  *See* docket no. 14.

[8]  *See* docket no. 16.

[9]  *See* docket no. 17.

[10]  *See* docket no. 19.

[11]  *See* docket nos. 20, 21.

[12]  *See* docket no. 28.

[13]  *See* docket nos. 29, 30.

[14]  *See* docket no. 31.

August 25, 2009, and indicated that it would be rescheduled after resolution of the motion to withdraw.[15]

On September 3, 2009, the court held a hearing on Francom's first lawyer's motion to withdraw.[16]  At the hearing, the court granted that motion and appointed Assistant Federal Defender Vanessa M. Ramos as Francom's new counsel of record.[17]  The court also instructed Francom's new counsel to determine, as soon as possible, whether Francom intended to pursue the motion to suppress filed by Francom's first lawyer.

On February 26, 2010, the court scheduled a status conference for March 4, 2010.[18]  At that status conference, Francom's counsel indicated that Francom wished to pursue the previously filed motion to suppress.  Accordingly, the court instructed Francom's counsel to file an amended motion to suppress that expressed Francom's arguments with more specificity than the motion filed by Francom's first lawyer.[19]  The court also scheduled an evidentiary hearing on the motion to suppress for March 25, 2010.[20]

---

[15] *See* docket no. 32.

[16] *See* docket no. 33.

[17] *See id.*; docket no. 34.

[18] *See* docket no. 53.

[19] *See* docket no. 54.

[20] *See id.*

On March 16, 2010, Francom filed an amended motion to suppress.[21] On March 25, 2010, the court conducted the evidentiary hearing on Francom's motion to suppress.[22] At the conclusion of the hearing, the court set a briefing schedule for the motion.[23] After Francom's motion for an extension of time to file his opening brief was granted,[24] Francom filed his opening brief on April 21, 2010.[25] On April 28, 2010, the government filed its responsive brief.[26] On May 11, 2010, Francom filed a notice indicating that he would not be filing a reply brief.[27]

On May 12, 2010, Francom filed his motion for a *Franks* hearing[28] and his motion for disclosure of the identity of a confidential informant.[29] The government filed its responses to those motions on May 17, 2010.[30]

On June 7, 2010, the court scheduled a hearing for July 8, 2010, to hear argument on Francom's motion for a *Franks* hearing and motion for disclosure of the identity of a confidential

---

[21] *See* docket no. 55.

[22] *See* docket no. 58.

[23] *See id.*

[24] *See* docket nos. 61, 62.

[25] *See* docket no. 63.

[26] *See* docket no. 65.

[27] *See* docket no. 66.

[28] *See* docket no. 68.

[29] *See* docket no. 67.

[30] *See* docket nos. 69, 70.

informant, as well as final argument on Francom's motion to suppress.[31]  On July 8, 2010, the

court convened, but Francom had not been transported to the court for the hearing.  Based on the

request of Francom's counsel, the hearing was rescheduled for July 12, 2010, so that Francom

could be present.  At the conclusion of the July 12, 2010 hearing, the court took all of Francom's

pending motions under advisement.[32]

## FACTUAL BACKGROUND

The facts underlying the motions before the court come from three separate incidents

involving Francom.  The court will identify each of those incidents by date and discuss the facts

for each incident in turn.

### I.  October 2, 2008

In the months leading up the October 2, 2008 incident, Detective Gregory McArthur of

the Midvale City Police Department ("Detective McArthur") received information indicating that

Francom was distributing methamphetamine.[33]  Detective McArthur passed that information

along to several law enforcement officers, including Officer Eric Densley of the Midvale City

Police Department ("Officer Densley").[34]

_____

[31]  *See* docket no. 73.

[32]  *See* docket no. 74.

[33]  *See* docket no. 71, Transcript of Evidentiary Hearing ("Tr. ____"), 15, 60.

[34]  *See id*.

On October 2, 2008, Officer Densley received information indicating that Francom would be in a particular area and that Francom had an outstanding warrant for his arrest.[35] That same day, Officer Densley located a vehicle matching the description of Francom's vehicle.[36] After checking with his dispatch office, Officer Densley confirmed that the vehicle was Francom's and that Francom had an outstanding warrant for his arrest.[37] Consequently, Officer Densley conducted a traffic stop and called for a backup officer.[38] Officer Densley approached Francom's vehicle and informed Francom that he had been stopped based on the outstanding arrest warrant.[39] Once the backup officer arrived, Francom was directed to exit his vehicle, placed under arrest, and searched.[40] That search revealed that Francom had between $4000 and $5000 in currency in his pocket, which was separated into certain denominations.[41]

After Francom's arrest, Officer Densley had a narcotics detection canine conduct a search of the vehicle.[42] The canine signaled the presence of a controlled substance in the area of the

---

[35] *See* Tr. 10.

[36] *See* Tr. 11, 16.

[37] *See id.*

[38] *See* Tr. 11-12.

[39] *See* Tr. 17.

[40] *See* Tr. 12, 18.

[41] *See* Tr. 12.

[42] *See* Tr. 12, 19-20.

vehicle's gearshift.[43]  A search of the vehicle revealed a small plastic bag of methamphetamine and an "owe sheet."[44]  Officer Densley testified that an "owe sheet" was something used by an individual distributing controlled substances to keep track of the debts of that individual's customers.[45]  Officer Densley called for a tow truck to remove Francom's vehicle and transported Francom to the South Salt Lake Police Department.[46]

Officer Densley then called Detective McArthur to communicate that Francom had been arrested on the outstanding warrant.[47]  Because Detective McArthur had received information indicating that Francom kept his drugs in key boxes underneath his vehicle, Detective McArthur asked Officer Densley if he had looked underneath the vehicle to locate any such key boxes.[48]  Officer Densley indicated that he had not.[49]  Consequently, Officer Densley instructed his dispatch office to call the towing company to ask that the vehicle be left on the tow truck.[50]  Officer Densley went to the tow yard to inspect the vehicle while it was still on the tow truck.[51]

---

[43]  *See id.*

[44]  *See* Tr. 12-13, 20-21.

[45]  *See* Tr. 13.

[46]  *See* Tr. 13-14, 20-21.

[47]  *See* Tr. 13-14, 21-22.

[48]  *See* Tr. 14, 22, 62-63.

[49]  *See* Tr. 14.

[50]  *See id.*

[51]  *See id.*

That inspection revealed three key boxes located on the undercarriage of the vehicle.[52] Two of those boxes contained a white crystal substance,[53] which the government asserts was confirmed to be methamphetamine. The other box contained what appeared to Officer Densley to be a small amount of marijuana.[54]

## II.  December 2, 2008

On December 2, 2008, Detective McArthur was conducting surveillance on a known narcotics house, which included watching for short-term traffic at the house and checking certain vehicles that visited the house.[55] Detective McArthur had previously asked Officer Kresdon Bennett of the Midvale City Police Department ("Officer Bennett") to be in the area of the house to assist with Detective McArthur's checks of certain vehicles.[56] Specifically, Detective McArthur testified that he instructed Officer Bennett to attempt to stop certain of the identified vehicles based on any vehicle-related violations.[57]

At one point, Detective McArthur left his surveillance to follow a vehicle leaving the house.[58] Upon returning to his surveillance of the house, Detective McArthur noticed a black

---

[52]  *See id*

[53]  *See id.*

[54]  *See id.*

[55]  *See* Tr. 28, 63.

[56]  *See id.*

[57]  *See* Tr. 64.

[58]  *See* Tr. 63.

vehicle parked at the house.[59]  When Detective McArthur saw the black vehicle leave the house,

he contacted Officer Bennett and asked him to attempt to stop the vehicle.[60]  Officer Bennett

observed the black vehicle and pulled up behind it.[61]  Officer Bennett ran a computer check on

the vehicle, which came back with a registration alert indicating that the vehicle was not

insured.[62]  While conducting that computer check, Officer Bennett observed the vehicle drift over

the "fog line" of the travel lanes.[63]  Based on those violations, Officer Bennett conducted a traffic

stop of the vehicle.[64]

Officer Bennett approached the vehicle to make contact with the driver.[65]  Based on his

past encounters with Francom, Officer Bennett immediately identified the driver as Francom.[66]

Officer Bennett identified himself, informed Francom of the reasons for the traffic stop, and

requested Francom's driver's license, insurance card, and vehicle registration.[67]  Francom

responded by indicating that he had recently purchased the vehicle from a friend and did not

---

[59]  *See* Tr. 64.

[60]  *See id.*

[61]  *See* Tr. 28.

[62]  *See id.*

[63]  *See id.*

[64]  *See id.*

[65]  *See* Tr. 29.

[66]  *See id.*

[67]  *See id.*

believe that he had an insurance card.[68]  Based on his knowledge of Francom's history, Officer

Bennett contacted Detective McArthur to request assistance during the traffic stop.[69]  Detective

McArthur arrived at the scene while Officer Bennett was still waiting for dispatch to return

vehicle registration, driver's license, and warrants checks for Francom.[70]  Officer Bennett then

approached the vehicle and asked Francom to exit the vehicle.[71]  Rather than exiting the vehicle,

however, Francom reached for the vehicle's center console area.[72]  Officer Bennett ordered

Francom not to reach for the center console area and again ordered Francom to exit the vehicle.[73]

Francom eventually exited the vehicle.[74]

After exiting the vehicle, Francom indicated to Officer Bennett that the insurance card for

the vehicle was possibly in a bag in the vehicle.[75]  Officer Bennett obtained Francom's consent to

---

[68]  *See id.*

[69]  *See* Tr. 29-30.

[70]  *See* Tr. 30.

[71]  *See id.*

[72]  *See id.*

[73]  *See id.*

[74]  *See id.*

[75]  *See* Tr. 30-31.

search both Francom's person and the bag in the vehicle.[76]  Officer Bennett located a large

amount of currency in Francom's pocket, which was divided into certain denominations.[77]

While waiting for completion of the computer checks, Officer Bennett retrieved his

narcotics detection canine to search the vehicle.[78]  Based on an exterior search, the canine

indicated on the driver's side handle area of the vehicle.[79]  Officer Bennett then had the canine

conduct a search of the interior of the vehicle, where the canine gave a first indication on a black

bag on the back seat of the vehicle and a second indication on the center console of the vehicle

next to the driver's seat.[80]  Based on those indications, Officer Bennett conducted a search of the

vehicle.[81]  In the black bag, Officer Bennett discovered over $7000 in currency, which was

bundled into certain denominations.[82]  In the area near the center console of the vehicle, Officer

Bennett discovered a bag that held multiple small plastic bags.[83]  Those small plastic bags

---

[76]  *See* Tr. 31.

[77]  *See id*.

[78]  *See* Tr. 32.

[79]  *See id*.

[80]  *See id*.

[81]  *See* Tr. 33.

[82]  *See* Tr. 33-34.

[83]  *See* Tr. 34.

contained a white, crystalline substance and a green, leafy substance, which Officer Bennett

suspected to be methamphetamine and marijuana.[84]

### III.  March 10, 2009

On March 10, 2009, Detective Rudy Chacon of the Unified Police Department's Drug

Enforcement Administration ("Detective Chacon") obtained a search warrant authorizing the

search of a hotel room and Francom's person.[85]  The affidavit in support of the request for the

search warrant included the following information relevant to Francom's motions before the

court:

- Beginning in January 2009, Detective Chacon had received information from Detective McArthur concerning Francom's drug trafficking.

- Detective McAruthur had previously arrested Francom for distribution of controlled substances and, during that arrest, Francom was found in possession of three ounces of methamphetamine, was combative, and attempted to flee from officers.

- Detective Chacon had received a police report indicating that Officer Densley had previously arrested Francom with a distributable amount of methamphetamine.

- Detective Chacon had interviewed a confidential informant ("CI") and knew the CI's personal information.

- The CI had provided information on twelve suspects who were customers of Francom's.

- The CI was familiar with the appearance, texture, and order of methamphetamine.

---

[84]  *See* Tr. 34-35.

[85]  *See* Tr. 54.

- The CI indicated that Francom was dealing in large quantities of methamphetamine, was staying at the hotel room to be searched, and was in possession of a large amount of methamphetamine.

- The CI was familiar with Francom's distribution methods, including Francom's meeting with suspected customers or having those customers come to various hotel rooms where Francom was staying.

- On March 10, 2009, surveillance conducted on the hotel room to be searched revealed short-term traffic entering and exiting the premises to be searched.

- During the surveillance, Detective Chacon observed a female exit the premises to be searched and enter a white pickup truck registered to Francom.

- During the surveillance, assisting investigators observed a vehicle leaving the parking lot of the premises to be searched, and that vehicle was listed as stolen. After being stopped, te driver of the vehicle was arrested for possession of a stolen vehicle and found in possession of a controlled substance.

- During the surveillance, a second traffic stop was initiated. The driver of that vehicle was found in possession of a substance that field-tested positive for methamphetamine. The driver told Detective Chacon that the methamphetamine had been purchased from a man named "Doug" inside the premises to be searched.

- Detective Chacon asked that the CI's identity remain confidential to protect against retaliation and to prevent harm to ongoing investigations.

- Francom was in the company of a female named Stephanie Carrol, who had been arrested within the last month for possession of a controlled substance.

- The affiant knew the criminal history of Francom and had been Francom's parole supervisor.

- The affiant knew that Francom had prior arrests and convictions for drug-related offenses and crimes of violence.

- The affiant knew that Francom had a history of fleeing and resisting arrest and was currently out on bail based on a previous arrest for charges including attempted escape, resisting arrest, and possession of a controlled substance with intent to distribute.[86]

After the warrant was obtained, Detective Chacon observed Francom leaving the hotel room referenced in the warrant and driving away from the hotel.[87]  Detective Chacon arranged to have Francom's vehicle stopped by Officer Winfield Scott Miller of the Taylorsville City Police Department ("Officer Miller").[88]  Officer Miller was assisting in an ongoing investigation of Francom at the request of Detective McArthur.[89]

At an intersection, Officer Miller pulled behind Francom's vehicle and activated the emergency equipment on his marked patrol vehicle.[90]  At that point, Francom's vehicle was blocked in front by an unmarked police vehicle and from behind by Officer Miller's vehicle.[91]  Francom then put his vehicle in reverse, striking Officer Miller's vehicle and pushing it backward.[92]  Officer Miller accelerated his patrol car forward to keep contact with Francom's

---

[86] *See* docket no. 63, Exhibit C.

[87] *See* Tr. 54.

[88] *See* Tr. 47, 54.

[89] *See* Tr. 46.

[90] *See* Tr. 47.

[91] *See id.*

[92] *See id.*

vehicle and to prevent from being pushed backward.[93]  Officer Miller maintained that position

until other patrol vehicles were able to block Francom's vehicle from all four sides.[94]  After

exiting his patrol vehicle, Officer Miller observed Francom making many movements inside his

vehicle.[95]  Based on Francom's refusal to comply with officers' commands, the officers were

forced to break the driver's side window of Francom's vehicle and extricate Francom from the

vehicle.[96]

## ANALYSIS

### I.  Motion to Suppress

In his motion to suppress, Francom presents arguments with respect to each of the three

incidents referenced above.  The court will address those arguments in turn.

### A.  October 2, 2008

Francom argues that Officer Densley's second, warrantless search of the vehicle at the

towing company was unlawful.  Francom first argues that there was no justification for

conducting the second search without first obtaining a warrant because his vehicle was

impounded by police and there was no likelihood that the evidence discovered underneath the car

would have been removed, destroyed, or tampered with.  Francom does not argue that Officer

Densley did not have probable cause to conduct the first warrantless search; instead, he argues

---

[93]  *See* Tr. 47-48.

[94]  *See* Tr. 48.

[95]  *See id.*

[96]  *See* Tr. 48-49.

that Officer Densley needed and lacked probable cause to conduct the second search of the vehicle without a warrant.

Francom's arguments are contrary to well-established Supreme Court precedent.  In *Michigan v. Thomas*, 458 U.S. 259 (1982) (per curiam), the Supreme Court reiterated its holding from several past cases that "when police officers have probable cause to believe there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody."  *Id.* at 261 (citing *United States v. Ross*, 456 U.S. 798, 807 n.9 (1982); *Texas v. White*, 423 U.S. 67 (1975); *Chambers v. Maroney*, 399 U.S. 42 (1970)).  Based on that holding, Francom's arguments fail.

### B.  December 2, 2008

With respect to this incident, Francom presents three arguments.  First, Francom argues that Officer Bennett's basis for the traffic stop was pretextual.  Second, Francom argues that Officer Bennett unreasonably extended the length of the traffic stop.  Finally, Francom argues that the government has failed to establish the reliability of the canine deployed during the traffic stop.  The court will address the arguments in turn.

First, Francom's pretext argument fails under well-established precedent.  "An officer may initiate a traffic stop once he has reasonable suspicion that criminal activity is, has, or is about to occur."  *United States v. Winder*, 557 F.3d 1129, 1135 (10th Cir. 2009) (quotations and citation omitted), *cert. denied*, 129 S. Ct. 2881 (2009).  "An observed traffic violation or a reasonable suspicion of such a violation under state law plainly justifies a stop."  *United States v.*

*Gregoire*, 425 F.3d 872, 876 (10th Cir. 2005); *see also Winder*, 557 F.3d at 1135 ("Our precedents leave no room to doubt the validity of a traffic stop based on an observed traffic violation."). In addition, the "standard for evaluating the validity of a traffic stop is objective, rather than subjective." *Winder*, 557 F.3d at 1135; *see also Gregoire*, 425 F.3d at 878 ("[T]he subjective motivation of the trooper is not pertinent given the observed [traffic] violation.").

In this case, Officer Bennett ran a computer check on Francom's vehicle, which came back with a registration alert indicating that the vehicle was not insured. While conducting that computer check, Officer Bennett observed the vehicle drift over the "fog line" of the travel lanes. These observed traffic violations clearly provided Officer Bennett with a "particularized and objective basis" for suspecting Francom of criminal activity. *Winder*, 557 F.3d at 1135 (quotations and citation omitted).

Second, Francom's unsupported argument that Officer Bennett unreasonably extended the stop is without merit. While it is true that Officer Bennett did use his narcotics detection canine to search the vehicle, the testimony adduced at the evidentiary hearing is uncontroverted that Officer Bennett did so while waiting for dispatch information. Francom's argument consists of nothing more than a bald assertion, and he failed to introduce any evidence at the evidentiary hearing to support it. *See United States v. Allen*, 235 F.3d 482, 489 (10th Cir. 2000) ("The proponent of a motion to suppress has the burden of adducing facts at the suppression hearing indicating that his own rights were violated by the challenged search." (quotations and citation omitted)).

Finally, Francom argues for the first time in his opening brief that the government failed to establish the reliability of Officer Bennett's canine. As noted by the government, Francom did not raise this issue in either his original motion to suppress or his amended motion to suppress. Furthermore, during the evidentiary hearing, Francom did not raise the issue of the reliability of the canine or adduce any evidence to support this argument. For these reasons, the court will not address this argument further. *See id.*

### C. March 10, 2009

Francom argues that the March 10, 2009 search warrant was not supported by probable cause because of deficiencies in the supporting affidavit. In considering whether a search warrant is supported by probable cause, the court reviews

> the sufficiency of the affidavit upon which a warrant was issued by looking at the totality of the circumstances and simply ensuring that the [issuing] magistrate had a substantial basis for concluding that probable cause existed. Probable cause exists when the facts presented in the affidavit would warrant a man of reasonable caution to believe that evidence of a crime will be found at the place to be searched.

*United States v. Harris*, 369 F.3d 1157, 1165 (10th Cir. 2004) (quotations and citations omitted) (alteration in original); *see also Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). "A magistrate's determination of probable cause should be paid great deference by reviewing courts," and "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review." *Gates*, 462 U.S. at 236.

Francom first argues that the affidavit provides insufficient information about the CI. Francom argues that there is no information about the CI's reliability, criminal history, any benefit the CI may have received for the information provided, and "other important factors."[97] While the factors identified by Francom may be relevant in certain instances, discussion of those factors is not required. Instead, the information from the CI included in the affidavit is considered under the "totality of the circumstances" test referenced above. *See, e.g.*, *United States v. Sturmoski*, 971 F.2d 452, 457 (10th Cir. 1992). Further, "there is no need for a declaration of the reliability of an informant when the informant's information is corroborated by other information." *Id*. In this case, the affidavit demonstrates that the information provided by the CI was corroborated by other information, including the observations of Detective Chacon.

Second, Francom argues that affidavit contains misleading information. Francom asserts that Detective Chacon's observation of short-term traffic during his surveillance is unsupported because the affidavit discusses only two females leaving the hotel room. Francom also asserts that the discussion of the first traffic stop is not relevant because that stop has no connection to Francom or the hotel room to be searched. Francom further claims that the affidavit fails to connect his prior arrests and drug-related activities with the hotel room to be searched.

The court concludes that all of these arguments fail. Francom fails to cite to any authority requiring Detective Chacon to indicate a specific number of visitors to support his observation of short-term traffic. The court also concludes that while the first traffic stop may not have had any

---

[97] Docket no. 63 at 11.

direct connection to Francom or the hotel room to be searched, it was not entirely irrelevant, nor was it misleading. Finally, Francom has failed to persuade the court that it was improper to include his criminal history in the affidavit or that his criminal history had to be directly connected to the hotel room, particularly when the affidavit also provided for the search of Francom's person. *See, e.g.*, *United States v. Artez*, 389 F.3d 1106, 1114 (10th Cir. 2004) ("[C]riminal history, combined with other factors, can support a finding of reasonable suspicion or probable cause."). In short, the court has determined that these arguments constitute the "divide-and-conquer" approach to attacking probable cause determinations, which this court will not entertain. *See United States v. Valenzuela*, 365 F.3d 892, 897 (10th Cir. 2004) ("[C]ourts may not engage in a 'divide-and-conquer' analysis of facts to determine whether probable cause existed." (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002))).

The court has rejected all of Francom's arguments concerning the March 10, 2009 search warrant. In addition, the court concludes that the totality of the circumstances set forth in the affidavit established probable cause in support of the warrant.

The court concludes that all of Francom's arguments in his motion to suppress are without merit. Accordingly, Francom's motion to suppress should be denied.

## II. Motion for *Franks* Hearing

In this motion, Francom argues that he is entitled to a *Franks* hearing with respect to the affidavit supporting the March 10, 2009 search warrant. In *Franks v. Delaware*, 438 U.S. 154 (1978),

the Court enunciated a two-pronged test, which if satisfied, entitles a defendant to an evidentiary hearing: "There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required."

*United States v. Owens*, 882 F.2d 1493, 1498 (10th Cir. 1989) (quoting *Franks*, 438 U.S. at 171-72). "While clear proof of deliberate or reckless omission is not required at the stage where entitlement to an evidentiary hearing is being demonstrated," the challenger must "make a 'substantial preliminary showing.'" *Id*. (quoting *Franks*, 438 U.S. at 170) (other quotations and citations omitted).

Francom's arguments center on the two traffic stops referenced in the affidavit. First, Francom argues that the inclusion of information about the first traffic stop "is misleading and recklessly included in the affidavit in an attempt to bolster it."[98] The court disagrees. The court has already concluded that the inclusion of information about the first traffic stop was not misleading. In addition, Francom has failed to make any showing, let alone a substantial

---

[98] Docket no. 68 at 2.

preliminary showing, that inclusion of that information in the affidavit rises to the level of being reckless.  Accordingly, this argument fails.

Second, Francom argues that the information about the second traffic stop in the affidavit constitutes a deliberate falsehood and a reckless disregard for the truth.  In support of that argument, Francom has submitted an affidavit of his counsel's investigator, which indicates that the investigator had interviewed the woman who was the subject of the second traffic stop, Demi McNealy ("Ms. McNealy").[99]  In that affidavit, the investigator indicates that Ms. McNealy told him that she denied telling officers that the methamphetamine seized as a result of the traffic stop came from Francom.  Francom also relies upon two photographs showing that the drugs found in the hotel room and the drugs seized from Ms. McNealy were in different packaging,[100] which Francom asserts is consistent with Ms. McNealy's representations to the investigator that she did not purchase the drugs from Francom.

The court concludes that this argument also fails.  The court is not persuaded that the affidavit, which consists almost entirely of hearsay statements, and the photographs constitute the required substantial preliminary showing that the information about the second traffic stop was included in the search warrant affidavit as a deliberate falsehood or with a reckless disregard for

---

[99]  *See* docket no. 68, Exhibit 2.

[100]  *See id.*, Exhibit 3.

the truth.[101]  That notwithstanding, the court concludes that when the information about the second traffic stop is excised from the affidavit, the affidavit still establishes probable cause in support of the search warrant.  Accordingly, the court concludes that no *Franks* hearing is required.

For these reasons, the court concludes that Francom's motion for a *Franks* hearing should be denied.

### III.  Motion for Disclosure of CI

In this motion, Francom seeks disclosure of the identity of the CI referenced in the affidavit supporting the search warrant.  In response, the government asserts that disclosure is not required in this case because the CI did not participate in or witness the March 10, 2009 incident.

The Tenth Circuit Court of Appeals has consistently held that when an informant is not a participant in or witness to the crime, disclosure of the informant's identity is not required.  *See, e.g.*, *United States v. Gordon*, 173 F.3d 761, 767-68 (10th Cir. 1999); *United States v. Brantley*, 986 F.2d 379, 383 (10th Cir. 1993); *United States v. Mendoza-Salgado*, 964 F.2d 993, 1000-01 (10th Cir. 1992); *United States v. Scafe*, 822 F.2d 928, 933 (10th Cir. 1987); *United States v. Halbert*, 668 F.2d 489, 496 (10th Cir. 1982).  It is undisputed in this case that the CI did not participate in or witness the March 10, 2009 crime.  Accordingly, disclosure of the CI's identity is not required, and Francom's motion should be denied.

---

[101]  It is not lost on the court that the affidavit is from an investigator, not from Ms. McNealy herself.  The fact that she was apparently unwilling to provide a personal affidavit does not bolster the credibility of the submitted affidavit.

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, **IT IS HEREBY RECOMMENDED** that Francom's motion to suppress,[102] motion for a *Franks* hearing,[103] and motion for disclosure of the identity of a confidential informant[104] all be **DENIED**.

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object. *See* 28 U.S.C. § 636(b)(1). The parties must file any objection to this Report and Recommendation within fourteen (14) days after receiving it. *See id*. Failure to object may constitute waiver of objections upon subsequent review.

DATED this 10th day of August, 2010.

BY THE COURT:

_____
PAUL M. WARNER
United States Magistrate Judge

---

[102] *See* docket nos. 12, 55.

[103] *See* docket no. 68.

[104] *See* docket no. 67.